**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| DARIA SALEH *ex rel.* L.A., E.A., and B.A., | : | Case No. 3:18-cv-153 |
| | : | |
| | : | Judge Thomas M. Rose |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM P. BARR, United States Attorney General, et al.,[1] | : | |
| | : | |
| | : | |
| Defendants. | : | |

---

### ENTRY AND ORDER GRANTING MOTION TO DISMISS (DOC. 21) AND TERMINATING CASE

---

This case is before the Court on the Motion to Dismiss (Doc. 21) filed by Defendants William P. Barr, United States Attorney General, Christopher Wray, Director of the Federal Bureau of Investigation, and Kirstjen Nielsen, Secretary of the Department of Homeland Security (collectively, "Defendants"). Plaintiffs, unnamed children of a lawful permanent resident, allege their constitutional rights will be harmed if their father is subject to a removal order or if their father is compelled to testify as a witness in a criminal trial. They seek declarations under the Declaratory Judgment Act that (1) federal agents conspired to dissuade their father from pursuing a naturalization application in 2010, and (2) their father is not required to testify in any future trial. Defendants move to dismiss Plaintiffs' Complaint (Doc. 1) for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Defendants' Motion is fully briefed. (Docs. 21-23.) The Court **GRANTS** the Motion to Dismiss (Doc. 21) and **TERMINATES** this case because Plaintiff's claims are not ripe and therefore do not present a case of controversy within the Court's jurisdiction.

---

[1] William P. Barr was sworn in as Attorney General on February 14, 2019. He is substituted as Defendant for former Attorney General Jefferson Sessions, III, pursuant to Federal Rule of Civil Procedure 25(d).

# I. BACKGROUND

As alleged in the Complaint, Plaintiffs' father, whose name has been withheld by Plaintiffs to protect his safety, was indicted on June 14, 2011 in federal court for eleven counts of Dealing in Firearms without Being a Licensed Dealer, two counts of Unauthorized Use, Transfer, Acquisition, Alteration or Possession of Benefits, and two counts of Wire Fraud. (Doc. 1 at ¶ 6.) Pursuant to a Plea Agreement, Plaintiffs' father pled guilty to counts five, thirteen and twenty of the indictment, one of each of the offenses charged. (*Id.* at ¶ 7.) Plaintiffs' father is a Lawful Permanent Resident ("LPR") of the United States. (*Id.* at ¶ 8.) Plaintiffs allege that their father's LPR status expires in 2019—the Court addresses this allegation in its analysis below. (*Id.* at ¶ 9.)

Plaintiffs allege that their father completed all of the requirements to become a United States citizen and was scheduled to be sworn-in as a citizen in November 2010. (*Id*. at 10.) One day before the ceremony, however, an officer of the United States Customs and Immigration Service ("USCIS") office in Cincinnati told Plaintiff's father not to attend the ceremony for security reasons. (*Id.*) Plaintiffs allege that the USCIS officer's statement was untrue and was intended to mislead Plaintiffs' father into losing his status as a citizen. (*Id*.) At the time, Plaintiffs' father was under investigation but had not yet been indicted.

In 2011, while his criminal case was pending, Plaintiffs' father met with agents for the Federal Bureau of Investigation ("FBI"). (*Id.* at ¶ 11.) At the second meeting with FBI agents, one of the agents told Plaintiffs' father that the FBI could help him if he worked with them as an informant. (*Id*. at ¶ 12.) The FBI allegedly told Plaintiffs' father that they "would keep him out of jail" and "work behind the scenes" so that when he eventually had to go to immigration court, his case would be dismissed. (*Id.* at ¶ 13.) Plaintiffs' father was not told, as alleged by Plaintiffs, that he would ever have to testify in court for the FBI. (*Id*. at ¶ 14.)

After entering into the Plea Agreement on October 13, 2011, certain conditions of his plea were entered under seal on March 29, 2012. (*Id*. at ¶ 16.) Plaintiffs allege that their father has

2

been involved in and supplied information in terrorism cases.

In 2012, Plaintiffs' father received a letter from the USCIS office in Cincinnati telling him to come to their office. An FBI agent spoke to a USCIS representative and told Plaintiffs' father not to go or he would be taken into custody. (*Id*. at ¶ 20.) The FBI agent also told Plaintiffs' father to withdraw his request for citizenship, which he did. (*Id*. at ¶ 21.) The FBI thereafter secured the withdrawal of the USCIS warrant. Since 2012, Plaintiffs' father reports annually to USCIS that he is voluntarily working for the FBI and USCIS takes no action against him. (*Id*. at ¶ 23.)

Plaintiffs' father was told that he may have to testify in open court in a trial set for June or July 2018. On September 26, 2018, the parties jointly moved the Court to stay this action pending the completion of a criminal trial in which Plaintiffs' father might be asked to testify. The Court granted the stay. On December 7, 2018, the parties notified the Court that the criminal trial had been completed with the entry of a guilty verdict. Plaintiffs contend that the completion of the trial did not moot any of their claims.

Plaintiffs fear for their father's safety if he is required to testify in a trial. (*Id.* at ¶ 26.) Namely, they fear that the people against whom Plaintiffs' father has testified might retaliate against him. Such retaliation could occur in the United States or abroad. An FBI agent has told Plaintiffs' father that they cannot prevent his deportation, but would argue against it. (*Id*. at ¶ 27.) Plaintiffs allege that the FBI misinformed their father about their limited or lack of ability to intervene on his behalf with the USCIS.

Plaintiffs allege that their separation from or the harming of their father will deprive them of his continued love, affection, care and financial support. (*Id.* at ¶ 34.) As a remedy, Plaintiffs seek two declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201: (1) a declaration that federal agents conspired to prevent their father from attending a naturalization ceremony in 2010, thereby exposing him to the possibility of future removal proceedings; and (2)

3

a declaration that their father not be required to testify in any trial or public hearing resulting from his plea agreement. (*Id.* at ¶ 36.)

## II. LEGAL STANDARD ON DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the Complaint for lack of jurisdiction and for failure to state a claim. A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may involve a facial or factual attack. *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). Here, Defendants bring a facial attack; therefore, the Court must accept the Complaint's allegations as true. *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the Court likewise must accept all factual allegations as true and construe the Complaint in the light most favorable to Plaintiffs. *Schaefer v. U.S. Postal Serv.*, 254 F. Supp. 2d 741, 745-46 (S.D. Ohio 2002). The court need not accept as true legal conclusions or unwarranted factual allegations. *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018). To survive a Rule 12(b)(6) motion, the "plaintiff must present a facially plausible complaint asserting more than bare legal conclusions." *Id*.

## III. ANALYSIS

Defendants argue that the Complaint fails to establish subject matter jurisdiction for three reasons: (1) Plaintiffs have not identified a waiver of sovereign immunity, (2) Plaintiffs lack constitutional standing, and (3) Plaintiffs' claims are not ripe. (Doc. 21 at 4.) For the reasons below, neither of Plaintiffs' claims for declaratory judgment is ripe. The Court therefore does not consider Defendants' other arguments under Rule 12(b)(1) or (6).

The basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580 (1985). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997) (citing *Pacific Gas & Elec. Co. v. State Energy*

4

*Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 200–01 (1983); *Dames & Moore v. Regan,* 453 U.S. 654, 689 (1981)).

"A case is ripe for pre-enforcement review under the Declaratory Judgment Act only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Magaw*, 132 F.3d at 284 (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). A court must weigh several factors to determine if a dispute is ripe: (1) the hardship to the parties if judicial relief is denied at the pre-enforcement stage in the proceedings, (2) the likelihood that the alleged harm will ever occur, and (3) "whether the case is fit for judicial resolution at the pre-enforcement stage, which requires a determination of whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." *Magaw*, 132 F.3d at 184 (citing, inter alia, *Brown v. Ferro Corp.,* 763 F.2d 798, 801 (6th Cir.) ("ripeness doctrine ... requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances"), *cert. denied,* 474 U.S. 947 (1985)). "[T]he prudential considerations that weigh in the ripeness calculus are the need to 'fles[h] out' the controversy and the burden on the plaintiff who must 'adjust his conduct immediately.'" *Magaw*, 132 F.3d at 284 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

Here, Plaintiffs allege that they will suffer an injury if their father is removed from the country (first claim) or he is retaliated against for testifying at trial as a Government witness (second claim). Plaintiffs have not alleged that either of these events are imminent or likely to ever occur. In order for Plaintiffs' father to be removed from the country, a series of events would have to occur. As Defendants argue, he would be subject to deportation if he "does not apply for citizenship; U.S. Immigration and Customs Enforcement ("ICE") brings removal proceedings against their father in the future; an immigration judge determines that their father is removable and enters an order of removal; the Board of Immigration Appeals ("B.I.A.") and a federal court of

5

appeals uphold the immigration judge's decision; and their father is removed." (Doc. 23 at 2.)

Plaintiffs point to their allegations that an ICE warrant for their father has already been issued (Doc. 1 at ¶ 19-22) and that his LPR status expires in 2019 (*id.* at ¶ 9). An ICE warrant is just the first step in removal proceedings, which, as Defendants note, may be challenged. In addition, Defendants cite authority showing the LPR status does not expire, as alleged by Plaintiffs, without adjudication. *See* 8 C.F.R. § 1001.1(p) (LPR status "terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission"); *Matter of C-J-H*, 26 I & N Dec. 284, 287 (BIA 2014) ("The respondent therefore remains a lawful permanent resident until there is a final order of removal."); *see also* Maintaining Permanent Residence, U.S. Citizenship & Immigration Servs., https://www.uscis.gov/green-card/after-green-card-granted/maintaining-permanent-residence ("You will lose your permanent resident status if an immigration judge issues a final removal order against you.") (last updated Feb. 17, 2016).

The Court would have to make many assumptions about how the adjudicative process would proceed to reach the conclusion that Plaintiffs' father will lose his LPR status and be subject to removal. The Court does not have jurisdiction to rule on such hypothetical outcomes. Plaintiffs cite *Hamdi v. Napolitano*, 620 F. 3d 615 (6th Cir., 2010), in which the children of a parent facing deportation were found to have standing to sue under the Declaratory Judgment Act. In that case, however, the plaintiffs' claims were ripe because a final order of removal had already been entered against their parent. *Id.* at 619.

Plaintiffs also have not alleged that their father is in imminent danger of retaliation for providing testimony at trial. The criminal trial alleged in the Complaint has been completed. The Court stayed this case, at the parties' joint request, while it was pending. Plaintiffs never moved to lift the stay and seek relief related to that trial. These facts demonstrate that the alleged threat to Plaintiffs' father, upon which they base their claims, is not imminent or even likely to occur in the near future. Again, Defendants accurately outline the sequence of events that would

6

have to occur for Plaintiffs' alleged injury to materialize: their father must be served with a trial subpoena; the trial judge must deny any motion to quash the subpoena or to modify the subpoena to protect his identity; their father must testify in open court; and unnamed individuals must retaliate against him for his testimony. The Court cannot predict whether any of these events will occur. Indeed, a trial judge's determination on a motion to quash will be based on many factors, including the claims being tried, the evidence offered at trial, and the anticipated content of Plaintiffs' father's testimony.

In sum, Plaintiffs' Complaint must be dismissed because it is "anchored in future events that may not occur as anticipated, or at all." *Magaw*, 132 F.3d at 284.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion to Dismiss (Doc. 21) and **TERMINATES** this case.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, February 27, 2019.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE